# EXHIBIT 1

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/1/2017 5:21:14 PM
STEPHEN T. PACHECO
Jasmin Lopez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

ZAC FRANKLIN,
RAVEN TWO FEATHERS,
and KEVIN BRENNAN,

      Plaintiffs,

                                   Case assigned to Mathew, Francis J.

v.                                Case No.  D-101-CV-2017-01534

SANTA FE UNIVERSITY OF ART
AND DESIGN, LLC, a New Mexico
Limited Liability Company, LAUREATE
EDUCATION, INC., a Delaware Corporation,
LAUREATE EDUCATION INTERNATIONAL LTD.,
a Delaware Corporation, and
WENGEN ALBERTA, LIMITED PARTNERSHIP,
an Alberta Limited Partnership,

      Defendants.

## CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT, VIOLATION OF THE UNFAIR PRACTICES ACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, NEGLIGENT MISREPRESENTATION, AND UNJUST ENRICHMENT

Plaintiffs Zac Franklin, Raven Two Feathers, and Kevin Brennan (collectively Plaintiffs), by and through undersigned counsel, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants Santa Fe University of Art and Design, LLC, Laureate Education, Inc., Laureate Education International Ltd., and Wengen Alberta, Limited Partnership (collectively Laureate or Defendants). Plaintiffs allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## PARTIES, VENUE, AND JURISDICTION

1.      Plaintiffs Zac Franklin, Raven Two Feathers, and Kevin Brennan are students at Santa Fe University of Art and Design. Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons.

2.      Santa Fe University of Art and Design, LLC (the University, or SFUAD), is a New Mexico limited liability company with its principal place of business located in Santa Fe, Santa Fe County, New Mexico.

3.      Laureate Education, Inc. is a Delaware corporation with its principal place of business located in Baltimore, Maryland.

4.      Laureate Education International Ltd. is a Delaware corporation with its principal place of business in Baltimore, Maryland.

5.      Upon information and belief, Laureate Education International Ltd. is a subsidiary of Laureate Education, Inc. Upon information and belief, Laureate Education Inc. and Laureate Education International Ltd. operate and control Santa Fe University of Art and Design, LLC as a part of what is designated the Laureate International Universities system.

6.      Wengen Alberta, Limited Partnership (Wengen), is an Alberta, Canada limited partnership with its principal place of business located in New York, New York. Upon information and belief, Wengen controls Laureate Education Inc. and controls, operates, and owns the Santa Fe University of Art and Design, LLC.

7.      The events giving rise to this action occurred in Santa Fe County, New Mexico.

8.      Pursuant to NMSA 1978, § 38-3-1, jurisdiction and venue are proper in this Court.

## CLASS ALLEGATIONS

### Laureate and the Business of For-Profit Higher Education

9.      Laureate operates more than 70 for-profit colleges or education institutions in 25 countries around the world. In 2007 Laureate was bought for $3.8 billion and became a private company. Its revenue in 2015 was more than $4 billion. In 2016 it went public with an initial public offering that raised approximately $490 million.

10.      The for-profit college economic model relies on student volume for increasing profits. The recruiting process is essentially a sales process. Investor demand for growth and profits is satisfied only by dramatically increasing enrollment. Enrollees are attracted by many representations regarding the value and stability of the program, the time in which programs can be completed, the availability of federal financial aid, the job placement rate upon graduation, transferability of credits, and the reputation and accreditation of the schools.

11.      Laureate's ideal is reflected by the dramatic expansion of its Walden University, a Laureate institution in Minneapolis, Minnesota, which grew from 2,082 students in the fall of 2001 to 47,456 students in the fall of 2010. Walden's growth in enrollment was paralleled by a striking growth in revenue: the school collected $190.7 million in revenue in 2006, a figure which grew only three years later to $377 million.

12.      Walden also burdens its students with the second highest debt load of any United States college.

13.      For-profit schools receive the majority of their revenues from the federal government through its financial aid programs. Between 2001 and 2010, the share of Title IV financial aid funds collected by for-profit schools increased from $5.4 billion to $32.2 billion. In 2010, the for-profit schools examined by the U.S. Senate Committee on Health, Education,

Labor, and Pensions derived 79% of their revenues from federal financial aid. Federal financial aid is intended to support educational opportunities for students, but for-profit education companies direct much of the revenue to marketing and recruiting new students from whom to profit.

14.     Laureate Education Inc. is a public benefit corporation. A public benefit corporation is intended "to produce a public benefit or public benefits and to operate in a responsible and sustainable manner;" it is required to consider the "best interests of those materially affected by the corporation's conduct, and the specific public benefit or public benefits identified in its certificate of incorporation." Del. Code Ann., Tit. 8, Ch. 1 § 362. The business and affairs of a public benefit corporation must be managed "in a manner that balances the pecuniary interests of the stockholders, the best interests of those materially affected by the corporation's conduct, and the specific public benefit or public benefits identified in its certificate of incorporation." *Id.* Maryland law has similar requirements: the corporation must "consider the effects of any action, or decision not to act, on . . . the interests of customers as beneficiaries of the general or specific public benefit purposes of the benefit corporation; [and] community and societal considerations, including those of any community in which offices or facilities of the benefit corporation or the subsidiaries or suppliers of the benefit corporation are located." Md. Code, Corps. & Ass'ns § 5-6C-07(a)(1).

15.     Laureate touts its status as a public benefit corporation to distinguish itself from competitors and to market itself to students. In its recent initial public offering, Laureate claimed it "has a mission to create a positive impact on society" and "considers the impact of its business on workers, the community and the environment." Laureate self-describes its public benefit as

4

"to produce a positive effect for society and persons by offering diverse education programs delivered online and on premises operated in the communities that we serve."

16.     In the words of Laureate's founder, chairman, and executive officer Douglas Becker:

> We recognize the enormous importance that society places on education as a public good or even a civil right, and we respect the role that government plays in ensuring quality and access to education. As a leader in this field, we are required to operate with the highest integrity and the deepest commitment to social responsibility. This has always caused us to have a culture that combines the 'head' of a business enterprise – scalable, efficient and accountable for measurable results – with the 'heart' of a non-profit organization – dedicated to improving lives and benefitting society. We reconcile these two concepts by delivering measurable results for our students, recognizing that when our students succeed, countries prosper and societies benefit. This means that we have always asked our stockholders and employees to recognize our commitment to put the needs of our students first.

17.     Laureate has acted contrary to its stated purpose, contrary to law, and contrary to the best interests of those materially affected by its actions, including SFUAD students, faculty, and the city of Santa Fe. Laureate has betrayed these interests in favor of the pecuniary interests of its stockholders.

18.     Laureate's various interrelated and connected entities symbiotically feed each other. SFUAD, for example, pays Laureate Education, Inc. large sums in management, consulting, legal, accounting, and human resource fees. Upon information and belief, the fund transfers totaled more than $4 million in 2015 and almost $3.5 million in 2016.

19.     Laureate's financial management practices have brought the company's schools under repeated scrutiny by the federal government. Three of Laureate's American institutions have been placed on the Department of Education's "heightened cash monitoring" list, calling for additional oversight of financial and compliance issues by the Federal Student Aid office.

20.     Laureate is under investigation in several countries. These include regulatory investigations in Chile on charges of deceptive trade practices and false claims; IRS and SEC investigations in the United States over an alleged pay-to-play scheme in the United States and possible bribes in Turkey in violation of the U.S. Foreign Corrupt Practices Act; and assessments in Spain for millions of dollars in taxes.

### Laureate's Lack of Quick Profits in Santa Fe

21.     In the summer of 2008 Laureate devised a plan to take over New Mexico's oldest chartered college, the College of Santa Fe, founded by the De La Salle Christian Brothers in 1859.  Preying on the College of Santa Fe's financial vulnerability, Laureate first convinced the College of Santa Fe that Laureate would contract to provide substantial capital to allow the continuing operation of the college. Laureate had no intention of completing the agreement, however, planning instead to ensure the financial collapse of the College and to acquire control of the College's assets without also assuming its liabilities. Laureate then backed out of the initial deal, leaving the College in desperate financial condition and with no option other than to go into bankruptcy and close. When the College closed in spring 2009, Laureate returned and designed an agreement with the new owner of the property, the City of Santa Fe, in which Laureate would lease all the property and assets it needed to operate its own for-profit college within the City of Santa Fe.

22.     Laureate intended to trade on the College of Santa Fe's cherished reputation and important role in the community to lure students to Santa Fe, New Mexico with the promise of a prestigious degree in art and design. Laureate expected enrollment to grow and its profits to increase commensurate with enrollment growth. Ignoring the school's historically limited enrollment numbers—the College of Santa Fe had always maintained a relatively small student

population—Laureate projected enrollment at the school to increase to 1,500 and perhaps as many as 3,000 students.

23.     Only 650 students are enrolled at SFUAD for the 2016-17 school year. Because of SFUAD's failure to expand quickly enough, the school would not generate the profits Laureate wanted as quickly as Laureate wanted them.

24.     Consistent with Laureate's plan to operate an arts and design university in Santa Fe virtually risk free, Laureate placed profits above students and promptly moved to eliminate SFUAD.

25.     In February 2016, Laureate removed President Laurence Hinz and replaced him with an absentee President and corporate representative, Maria Puzziferro.

26.     Ms. Puzziferro's task was to oversee Laureate's divestment from SFUAD. Ms. Puzziferro previously presided over a similar dismantling of the Rocky Mountain School of Art and Design in Denver, Colorado.

27.     In May 2016, Laureate announced a planned sale to Raffles Education Corp. (Raffles), a for-profit education company based in Singapore with no presence in the United States. Raffles, like Laureate, has run afoul of government regulators in three other countries.

28.     When the sale was announced, Laureate promised its students and faculty that SFUAD would continue to provide the same quality education after the sale as before.

29.     Laureate continued to aggressively market the school for the 2016-17 and 2017-18 school years, attracting incoming freshmen and returning students with an unrestrained sales process that promoted SFUAD's high quality education, range of art and design programs, and valuable degrees. Students were assured that SFUAD would not close. Freshmen arrived on

campus, some staking everything they had on the opportunity to attend SFUAD, expecting to receive what they had been promised.

30.     Laureate also represented to students and faculty that if the sale was not completed, the school would continue to carry on as it was. Students were led to believe that whether under new ownership or the same ownership, they would receive the same educational opportunities as promised and would still have the opportunity to complete their degrees. Returning students continued to pay tuition relying on Laureate's assurances that SFUAD would maintain its high standards.

31.     Faculty and students were not consulted about the sale. Department chairs were not given the opportunity to plan for the impact of a sale on SFUAD programs. Academic leadership was not permitted meaningful participation at any stage of the process.

### The Collapse of the Raffles Acquisition and
### Laureate's Undisclosed Plan to Close the University

32.     Laureate's sale to Raffles was a convenient escape plan but was fraught from the beginning with problems of Laureate's making.

33.     Laureate maintained a public façade that the sale was on track, but knew long before announcing it that the sale would not succeed. In October 2016, the Higher Learning Commission (HLC), the accrediting body in the central United States, and the federal Department of Education (ED) deferred a decision on the sale. The HLC and ED deferred decision again in December 2016 and February 2017.

34.     In January 2017, Maria Puzziferro, SFUAD's interim president and a Laureate representative, let it slip to limited faculty that the HLC would not approve the acquisition, which she blamed on Raffles' failure to produce the required documents for approval. Ms.

Puzziferro's knowledge regarding the futility of the sale negotiations was withheld from the rest of the faculty and students.

35.     Despite this knowledge, Laureate continued to misrepresent to students, faculty, and the public that the entities were working toward completing the sale and that SFUAD would continue its operations. The HLC was expected to meet in June 2017. Ms. Puzziferro stated that the parties were working towards approval at that time.

36.     Laureate's aggressive marketing and recruitment of incoming freshmen for the fall 2017 semester, which continued unabated, was disingenuous and misleading. Despite internal knowledge that the sale would likely collapse Laureate failed to inform incoming freshmen of the proposed sale, the problems affecting the sale, or the impact on students if the sale did not proceed.

37.     When announcing the collapse of the sale, Laureate continued to blame others for the turmoil, saying that "recent indications from our regulators of further delays to the transfer of ownership process" necessitated Laureate's decision to cancel the sale and suspend enrollment of students for the fall 2017 semester.

38.     What Laureate failed to disclose, however, was that the acquisition agreement between Laureate and Raffles provided that if the sale was not completed in early 2017, the parties' escrow money would be returned and they could walk away from the agreement. Thus, Laureate knew beforehand that it would terminate the "sale" and Laureate's stated intention to work towards HLC approval in June 2017 was a misrepresentation. Laureate had no true intention of continuing the school's operations or acting in the best interest of its students.

**Laureate's Willful Failure to Act in the Interests of Students and Faculty**

39.     After termination of the sale, Laureate cancelled new enrollment, locked the enrollment portal, and announced plans for what it claimed would be a "thoughtful, phased teach-out and transfer process," ostensibly providing a skeleton program to allow students on course to graduate by spring 2018 to complete their degrees.

40.     But Laureate had no plan in place to provide for the students' welfare when the sale fell through. Laureate failed to promptly inform students and the information Laureate did provide was vague, incomplete, and self-serving. Laureate even failed to inform all incoming freshmen that the school would close and they would not have any opportunity to attend in the fall.

41.     Laureate had no "Plan B" and the school's actions belie its words. Instead of taking steps that would allow students to finish their degrees with a semblance of stability and continuing quality of education, Laureate has actively engaged in conduct that appears designed to sabotage the process.

42.     On April 10, 2017, Laureate abruptly terminated its Provost, Debra Tervala. Ms. Tervala, as the administrator in charge of academic affairs and the advocate for students and faculty, was the person most capable of developing and implementing a teach-out plan with a chance of accommodating the needs and interests of students and faculty. The Provost is the key academic leader who coordinates every academic program. Without the Provost, Laureate's professed intention to serve the interests of students is hollow.

43.     Other critical staff are being systematically terminated. Ms. Tervala's executive assistant, Sharon Russel, was fired on April 11, 2017. A financial aid officer trusted by students and essential to helping students understand their financial aid options in the new circumstances

was fired shortly thereafter. Susanne Miller, administrator for the Creative Writing and Literature, Contemporary Music, and Liberal Arts departments, was fired on April 18, 2017. Later the film school's key administrative assistant, Sandra Narvaez, was fired, leaving the largest program at SFUAD without the main administrator responsible for overseeing the daily operations of the film school's facility. Then the chair of SFUAD's Creative Writing and Literature Department, James Reich, was fired.

44.     Upon information and belief, the terminations are part of a "phased" plan, in which during Phase 1 Laureate intends to systematically gut the school of staff critical to its continued operations. Upon information and belief, Laureate devised the phased plan well before it told students what its true intentions were.

45.     Students and faculty are in limbo. Laureate has given no assurances to students or faculty that faculty will be employed in the fall of 2017, nor any indication of what classes they would teach. Instead, faculty have been directed to be "creative" in suggesting solutions to accomplish the teach-out, including the suggestion that distinct classes be combined into one.

46.     With only a fraction of a senior class in the teach-out, the collaborative benefits of collegial education are eviscerated. Students who cannot afford to transfer or who for other reasons stay at SFUAD will suffer because of the greatly diminished faculty, skeleton staff, limited classes, no interaction with juniors, sophomores, and freshmen, limited facilities, and fractured social life.

47.     For this shadow of an educational experience, Laureate intends to charge students full tuition, further harming students and massively increasing its profits in its last actions in Santa Fe.

48.     By withholding information about the collapse of the sale and closure of the school, Laureate intentionally placed faculty and students in a vulnerable position. Laureate's actions have left students and faculty frightened, worried, misinformed, and angry.

49.     The application deadline for most schools is January, so it is too late for students to apply for acceptance to other schools, meaning that opportunities to continue their education elsewhere are limited.

50.     The window for faculty hiring at other colleges and universities is also closed, meaning that faculty have no reasonable chance of finding employment elsewhere for the next academic year.

51.     Department chairs, faculty, and staff were told that Laureate would offer an enhanced summer semester, with additional classes and credits available for students close to graduation which could be applied to complete their degree requirements before the school closes. But Laureate has not developed an "enhanced summer semester," and has not developed the curriculum or provided for the faculty to teach it. Laureate has forbidden department chairs to add classes to the summer semester to enable students to complete their degree programs.

52.     Upon information and belief, the school cafeteria will be closed, only housing with kitchen facilities will remain open, and classes may be held in a single building.

53.     The speed with which Laureate has terminated employees and crippled academic governance indicates that Laureate knew before the termination of the sale that it intended to close the school and deprive students of the opportunities Laureate had held out to them. Laureate deceived the students and faculty by withholding this information and instead misleading students and faculty with assurances that the school would continue to operate with

the same quality education and students would have an uninterrupted path to graduation and a valuable degree.

54.     Laureate has no intention of conducting a proper teach-out. Instead, Laureate seeks to funnel students into similar for-profit educational institutions, some run by Laureate, that will accept the students outside of the usual application and acceptance process in order to increase enrollment at other for-profit institutions.

55.     Laureate has offered students a $2,500 transfer grant, which is little more than an illusory buyout. The transfer grant will not be paid directly to students but may be applied only to balances owed to SFUAD or tuition at certain other schools, subject to a number of conditions. The transfer grant will not come close to compensating students for the costs associated with transferring schools. For example, other schools have no obligation to match the financial aid that students have at SFUAD. The Robert Redford scholarship, the largest scholarship available at SFUAD, will not transfer to any out-of-state school. In addition, many SFUAD courses will not be accepted for credits at other institutions because of varying accreditation standards. Even credits that will transfer may not carry the same weight towards degree programs at new schools. Students simply cannot seamlessly transfer from SFUAD to another school, and the transfer grant will not come close to compensating students for the losses they will suffer.

56.     Laureate's actions show premeditated efforts to protect its bottom line without regard for the interests of its students or the promises made to them, in advance of the proposed sale to Raffles and the announcement of the decision to close.

57.     Before the fall 2016 semester, for example, each student was charged an additional $1,000 program fee which Laureate stated would be used to purchase equipment and materials for the benefit of students: the Contemporary Music department could spend the money

on instruments; Digital Arts on computers; Photography on cameras. Department chairs were asked for input regarding where the program fees should be applied. But the promised books, instruments, tools, and equipment never materialized. Department chairs were instructed not to spend the money. The program fees were never used for the students' benefit, and were not returned to students.

58.     Laureate also froze capital expenditures and failed to make infrastructure improvements necessary to maintain the quality of the education programs offered at SFUAD. Department chairs prepared budgets in October 2016, but were told by management, for a variety of pretextual reasons, that expenditures could not be made. For example, the Contemporary Music Department was promised and SFUAD budgeted for a state of the art recording console. Although the deposit for the console was paid, SFUAD never paid the balance.

59.     Upon information and belief, the failure to make infrastructure investments was an intentional decision made with knowledge of SFUAD's future sale or closure; knowledge that was withheld from students and faculty.

## ALLEGATIONS OF THE NAMED PLAINTIFFS

60.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

61.     Mr. Zac Franklin was finishing his freshman year in SFUAD's photography department when the news of the school's closure was announced. He came to SFUAD from Leander, Texas, and was offered a partial scholarship, renewable every year if he took at least twelve credits and maintained satisfactory academic progress. He took out a loan for $22,000 from Wells Fargo and made other payments to SFUAD out of his own pocket. He was raised by a single mom and is the first person in his family to go to college; he intended to finish his degree at SFUAD. He had enrolled in summer 2017 classes which have now been cancelled. He

had been offered a resident advisor position in a dormitory for the next academic year which he was relying on to pay for his housing. He is not eligible to enroll in the SFUAD teach-out for the fall of 2017. Because of SFUAD's closure he intends to enroll at Santa Fe Community College in the fall of 2017.

62.     Ms. Raven Two Feathers was completing her junior year in SFUAD's film department when the school's closure was announced. She came to SFUAD from Seattle, Washington and was awarded the Robert Redford/Milagro Initiative scholarship, also renewable for four years. Ms. Two Feathers is 24 credits away from graduation. She does not want to be subjected to the uncertainty and inferior quality of the SFUAD teach-out, but cannot afford any other option. The Redford scholarship is only valid at a New Mexico institution and no other comparable film program exists in New Mexico. Ms. Two Feathers has been given no assurances that the classes she needs will be offered, or what instructors will be kept on, or what kind of program will actually be available for the teach-out. Already in May 2017, while school was still in session, film students were unable to use SFUAD's stock footage source, because SFUAD did not pay the bill for the service.

63.     Mr. Kevin Brennan was completing his junior year in SFUAD's film department when the school's closure was announced. He was awarded two scholarships and a early decision financial award, renewable each year, which were instrumental in bringing him to SFUAD. Mr. Brennan had a career in journalism and is pursuing a second career in film production. He expected to graduate from SFUAD with a BFA in film in December 2018. That plan has been thwarted. Film is not a solitary pursuit, and an effective film program requires freshmen, sophomores, juniors, and seniors participating together in the many facets of production and post-production. Mr. Brennan sought assurance from SFUAD's president that the

teach-out would provide adequate instructors, courses, and support. He received no response. He has since learned that two key film professors, including the head of the post-production department, will not return to teach as SFUAD in the fall 2017 semester. Their absence dramatically reduces the quality of education provided by SFUAD to Mr. Brennan and all film students. If he has to transfer, many of his credits will not transfer, and his financial aid will not transfer. If he transfers he will lose substantial time and money. If he stays for the teach-out, his education and the value of his degree will be damaged.

64.     Each of the plaintiffs enrolled and planned to continue enrolling at SFUAD in reliance on Laureate's marketing and admissions process, including assurances of SFUAD's existence and stability, curriculum offerings, high quality faculty, and the offer of a reputable degree if Plaintiffs paid their tuition and satisfied the degree requirements. Plaintiffs continued to re-enroll at SFUAD in fulfillment of their obligations to obtain their degrees and in reliance on Laureate's assurances of continued viability with or without a sale. Without these assurances, Plaintiffs would not have enrolled or stayed at SFUAD.

65.     Plaintiffs received and were promised financial aid, including both SFUAD and New Mexico specific scholarships and federal financial aid. While Laureate has made minimal efforts to provide a list of colleges to which students may transfer, scholarships and other benefits do not transfer, further harming the students and jeopardizing Plaintiffs' ability to continue their education.

66.     In addition, many SFUAD credits will not transfer to other institutions, putting students considerably behind. The loss of credits in transferring will force students to spend more and take additional time to complete their education. And students in some of SFUAD's

programs do not have any comparable program among the available transfer schools to receive an education equivalent to what they signed up for at SFUAD.

67.     The options available to Plaintiffs—including either to transfer or stay for the teach-out—fail to deliver what Laureate promised. By the time Laureate revealed its decision to close, the application deadline at most other schools had passed. Many schools will no longer accept transfers for the fall 2017 semester or even spring 2018, further harming Plaintiffs. Many schools are not of the same quality as SFUAD and certain of its programs. Many schools are more expensive than SFUAD and do not offer equivalent financial aid. If students choose to stay and participate in SFUAD's teach-out, any degree they receive will have been devalued by Laureate's behavior and SFUAD's closure.

68.     Plaintiffs do not know if or where they will be able to continue their education. Because of Laureate's actions, Plaintiffs have suffered and will suffer substantial harm that will have dramatic and continuing effects on their lives, careers, and earning potential. Examples of harm include costs associated with applying to a different school, relocating, repeating classes for which they cannot transfer credits, increased tuition, decreased financial aid, additional loans, a greater debt load, and corresponding lack of freedom in occupational choices.

## CLASS ALLEGATIONS

69.     **Class Definition:** Plaintiffs Franklin, Two Feathers, and Brennan bring this action on behalf of themselves and the class of similarly situated individuals defined as follows:

**All individuals who expected to enroll as students at SFUAD in the fall of 2017.**

Excluded from this Class are all persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; persons who properly execute and file a timely

request for exclusion from the Class; any Judge presiding over this action and the members of his or her family; and Plaintiffs' counsel and Defendants' counsel.

70.     Plaintiffs are members of the Class, and with all members of the Class have been denied the opportunity to complete a degree program at the University, or will be subjected to an inferior education and devalued degree in the teach-out.

71.     **Numerosity:** the exact number of members of the Class is unknown, but individual joinder in this case is impracticable. The Class likely consists of in excess of 650 individuals. Members of the Class can easily be identified through Defendants' records.

72.     **Commonality and predominance:** there are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a.   Whether Defendants breached a contract with the students by failing to provide the education and programs promised;

b.   Whether Defendants made material misrepresentations and failed to disclose material facts to Plaintiffs;

c.   Whether Defendants engaged in unfair or deceptive trade practices in violation of the Unfair Practices Act by making false and misleading representations, including by engaging in all the conduct set forth above, in connection with the sale of educational goods and services;

d.   Whether Defendants engaged in unconscionable trade practices in violation of the Unfair Practices Act by taking advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree and which resulted in a gross disparity between

18

the value of educational goods and services received by Plaintiffs and the price paid for the educational services;

e.  Whether Defendants breached the covenant of good faith and fair dealing by engaging in the conduct set forth herein, wrongfully withholding the benefits of promised educational goods and services from Plaintiffs to their detriment, with deliberate disregard for the potential harm to Plaintiffs, and without just cause or excuse;

f.  Whether Defendants made negligent or intentional and material misrepresentations regarding the SFUAD education promised to Plaintiffs, consisting of untrue representations and failures of disclosure on which Defendants intended Plaintiffs to rely, and on which Plaintiffs did in fact rely;

g.  Whether Defendants had a duty to disclose information to Plaintiffs and a duty not to misrepresent information Defendants provided to Plaintiffs, whether Defendants violated that duty, whether Defendants' misrepresentations were untrue, whether Defendants' misrepresentations were known by Defendants to be untrue, whether Defendants' misrepresentations were made with the intent to deceive and to induce Plaintiffs to rely on the misrepresentations, and whether Plaintiffs did in fact rely on the misrepresentations;

h.  Whether Defendants were unjustly enriched by retaining payments from Plaintiffs;

i.  Whether Defendants engaged in deceptive and misleading marketing and recruitment practices;

j.  Whether Defendants required payment of fees and tuition without giving promised value in return;

k. Whether class members sustained losses from being forced to transfer, suspend or discontinue their education, attend a school not of their choice, or attend a school without equivalent education or programs to those offered at SFUAD;

l. Whether Defendants failed to timely and fully inform students about events occurring at SFUAD;

m. Whether class members sustained losses from credits earned at SFUAD that will not transfer to other institutions; and

n. Whether class members sustained losses resulting from scholarships that do not transfer to other schools, increased loans, increased debt, moving costs, lost opportunities, and other costs associated with the closure of SFUAD.

73. **Typicality:** Plaintiffs' claims are typical of the other members of the Class in that Plaintiffs and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

74. **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the resources to do so.

75. **Superiority:** This class action is also appropriate for certification because class proceedings are superior to any other method for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. A class action presents fewer management difficulties and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## COUNT I
## BREACH OF CONTRACT

76.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

77.     Plaintiffs and Defendants entered into a contract in which Plaintiffs would pay tuition in return for Defendants providing a high-quality university education and granting a degree to Plaintiffs on the condition that Plaintiffs remain in good standing and fulfill the necessary academic requirements.

78.     Defendants breached the contract by failing to provide the high-quality education and programs they offered, including by engaging in all of the conduct set forth above.

79.     For incoming freshmen members of the Class, Defendants anticipatorily breached the contract by engaging in all of the conduct set forth above.

80.     Defendants' actions and omissions caused Plaintiffs harm.

81.     The actions and omissions by Defendants were willful, wanton, reckless, malicious, oppressive, grossly negligent, and in bad faith, thereby entitling Plaintiffs to punitive damages.

## COUNT II
## VIOLATION OF THE UNFAIR PRACTICES ACT

82.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

83.     Defendants made false and misleading representations and oral and written statements to Plaintiffs regarding the educational goods and services provided by Defendants.

84.     Plaintiffs were misled by the false and misleading representations and oral and written statements made by Defendants.

85.     Defendants' unfair or deceptive trade practices include, but are not limited to, the following:

a.   Representing that goods and services had characteristics, uses, or benefits that they did not have;

b.   Representing that goods and services were of a particular standard, quality, or grade when they were of another;

c.   Using exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact and that doing so deceived or tended to deceive; and

d.   Failing to deliver the quality of goods and services contracted for.

86.     Defendants engaged in acts or practices in connection with their sale and offering for sale of educational goods and services, including by engaging in all of the conduct set forth above, that took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree and resulted in a gross disparity between the valued received by Plaintiffs and the price paid.

87.     Defendants' violations of the Unfair Practices Act were willful, thereby entitling Plaintiffs to treble damages for the harm caused by Defendants.

**COUNT III**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

88.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

89.     Plaintiffs and Defendants entered into a contract in which Plaintiffs would pay tuition in return for Defendants providing a high-quality university education and granting a degree to Plaintiffs on the condition that Plaintiffs remain in good standing and fulfill the necessary academic requirements.

90.     Implied in Plaintiffs' contract with Defendants was a covenant of good faith and fair dealing, which imposed upon Defendants a duty to deal with Plaintiffs fairly and in good faith.

91.     Defendants wrongfully withheld the benefit of the contract from Plaintiffs, to their detriment, with deliberate disregard for the potential harm to Plaintiffs, and without just cause or excuse.

92.     Defendants breached the covenant of good faith and fair dealing by committing the aforesaid misconduct in bad faith, resulting in damages suffered by Plaintiffs.

93.     The actions and omissions of Defendants were willful, wanton, reckless, malicious, oppressive, grossly negligent, and in bad faith, thereby entitling Plaintiffs to punitive damages.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

94.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

95.     Defendants made negligent and material misrepresentations regarding the high-quality SFUAD education promised to Plaintiffs, consisting of untrue representations and failures of disclosure which Defendants intended Plaintiffs to rely on and upon which Plaintiffs did in fact rely, including by engaging in all of the conduct set forth above.

96.     Defendants' actions and omissions caused Plaintiffs to suffer harm.

97.     The actions and omissions of Defendants were willful, wanton, reckless, malicious, oppressive, grossly negligent, and in bad faith, thereby entitling Plaintiffs to punitive damages.

## COUNT V
## FRAUD

98.     Plaintiffs incorporate herein by reference all other allegations in this Complaint.

99.     There exists a special relationship between Defendants and the Plaintiffs and Class, which Defendants created by inviting Plaintiffs and the Class members into a university-student relationship described by its mission statement, marketing representations, catalog, and other written and verbal promises to the students regarding the quality of education to be provided by Defendants.

100.    Because of the special relationship, Defendants had a duty to disclose information to the students, which Defendants failed to do, and a duty not to misrepresent information Defendants provide to the students, which it also violated.

101.    Defendants' failure to disclose includes, but is not limited to, the following:

a.  Failure to disclose the intent to close SFUAD as soon as that intent was known;

b.  Failure to disclose the termination of the Raffles acquisition as soon as that was known; and

c.  Failure to disclose the closure of SFUAD in time for students to avoid suffering harm from the closure.

102.    Defendants' misrepresentations include, but are not limited to, the following:

a.  Representing that the quality of education would remain at the level promised, when Defendants knew it would not; and

b.  Marketing the sale of educational goods and services to students while knowing that the high quality of education would not be maintained and that students entering or

returning would not have the opportunity to get a degree or the education they had been promised.

103.    Defendants' misrepresentations were not true.

104.    Defendants' misrepresentations were known by Defenda not to be true.

105.    Defendants' misrepresentations were made with the intent to deceive and to induce Plaintiffs to rely on the misrepresentations; and

106.    Plaintiffs did in fact rely on the misrepresentations.

107.    Defendants' actions and omissions caused Plaintiffs to suffer harm.

108.    The actions and omissions of Defendants were willful, wanton, reckless, fraudulent, malicious, oppressive, grossly negligent, and in bad faith, thereby entitling Plaintiffs to punitive damages.

### COUNT VI
### UNJUST ENRICHMENT

109.    Plaintiffs incorporate herein by reference all other allegations in this Complaint.

110.    By accepting Plaintiffs' tuition payments, including program fees, and failing to deliver a quality education, the opportunity to obtain a degree, or promised services, goods, or materials necessary to obtain the quality education promised, Defendants knowingly benefitted at Plaintiffs' expense.

111.    Allowing Defendants to retain the benefit they received, given the circumstances alleged in this Complaint, would be unjust.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs and the Class pray for relief as follows:

1.      For an Order certifying this case as a class action, appointing the named Plaintiffs as class representatives under Rule 1-023 NMRA, and appointing Plaintiffs' counsel as counsel for the Class under Rule 1-023 NMRA;

2.      For a judgment in favor of Plaintiffs and the Class and against Defendants on all claims herein and awarding damages, including compensatory, actual, statutory, and punitive damages to Plaintiffs and the Class members in amounts to be determined at trial; and

3.      Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and expenses incurred in this action;

4.      Awarding Plaintiffs and the Class pre- and post-judgment interest to the extent allowable; and

5.      Awarding such other and further relief as is necessary to protect the interests of the Plaintiffs and the Class, and such other and further relief as the Court deems just.

Respectfully submitted,

BARDACKE ALLISON LLP

By:   /s/ Benjamin Allison
      Paul Bardacke
      Benjamin Allison
      Justin Miller
      141 E. Palace Avenue
      Santa Fe, NM  87501
      505-995-8000
      505-672-7037 (f)
      paul@bardackeallison.com
      ben@bardackeallison.com
      justin@bardackeallison.com

TINKLER LAW FIRM

By:   /s/ *Stephen E. Tinkler*
Stephen E. Tinkler
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Counsel for Plaintiffs and the Putative Class*

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/1/2017 5:21:14 PM
STEPHEN T. PACHECO
Jasmin Lopez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

ZAC FRANKLIN,
RAVEN TWO FEATHERS,
and KEVIN BRENNAN,

      Plaintiffs,

                                      Case assigned to Mathew, Francis J.

v.                                    Case No.   D-101-CV-2017-01534

SANTA FE UNIVERSITY OF ART
AND DESIGN, LLC, a New Mexico
Limited Liability Company, LAUREATE
EDUCATION, INC., a Delaware Corporation,
LAUREATE EDUCATION INTERNATIONAL LTD.,
a Delaware Corporation, and
WENGEN ALBERTA, LIMITED PARTNERSHIP,
an Alberta Limited Partnership,

      Defendants.

## JURY DEMAND

      Plaintiffs Zac Franklin, Raven Two Feathers, and Kevin Brennan, through undersigned

counsel, hereby demand a trial by jury of six (6) persons on all issues, claims, actions and defenses in

this case for which deposit in the amount of $150.00 is made herewith.

                             Respectfully submitted,

                             BARDACKE ALLISON LLP

By:   */s/ Benjamin Allison*
       Paul Bardacke
       Benjamin Allison
       Justin Miller
       141 E. Palace Avenue
       Santa Fe, NM  87501
       505-995-8000
       505-672-7037 (f)
       paul@bardackeallison.com
       ben@bardackeallison.com
       justin@bardackeallison.com

TINKLER LAW FIRM

By:   /s/ *Stephen E. Tinkler*
      Stephen E. Tinkler
      309 Johnson Street
      Santa Fe, NM  87501
      505-982-8533
      505-982-6698 (f)
      set@tinklernm.com

      *Attorneys for Plaintiff*

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 9:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| SUMMONS | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | **Case No.:   D-101-CV-2017-01534**<br><br>**Assigned:   The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,<br>RAVEN TWO FEATHERS,<br>KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND<br>DESIGN, LLC, LAUREATE EDUCATION,<br>INC., LAUREATE EDUCATION<br>INTERNATIONAL LTD., and<br>WENGEN ALBERTA, LIMITED<br>PARTNERSHIP,**<br><br>*Defendants.* | **DEFENDANT:**<br><br>SANTA FE UNIVERSITY OF<br>ART AND DESIGN, LLC<br>c/o Registered Agent:<br>Capitol Document Services Inc.<br>55 Old Santa Fe Trail, 2nd Floor<br>Santa Fe, NM 87501 |

**TO THE ABOVE NAMED DEFENDANT(S)**:  Take notice that:

1.   A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.
2.   You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.
3.   You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.   If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.   You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.
6.   If you need an interpreter, you must ask for one in writing.
7.   You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at ___Santa Fe_____, New Mexico, this _02_ day of __June_____, 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco

By: _____

/s/ *Benjamin Allison*
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*


THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF _____ )
_____ )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint and Plaintiff's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]      to _____ (*name of person*), _____,
(*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 9:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| **SUMMONS** | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | **Case No.:   D-101-CV-2017-01534**<br><br>**Assigned:   The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,<br>RAVEN TWO FEATHERS<br>and KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND<br>DESIGN, LLC, LAUREATE EDUCATION,<br>INC., LAUREATE EDUCATION<br>INTERNATIONAL LTD., and<br>WENGEN ALBERTA, LIMITED<br>PARTNERSHIP,**<br><br>*Defendants.* | **EFENDANT:**<br><br>LAUREATE EDUCATION, INC.<br>c/o Registered Agent:<br>Capitol Services, Inc.<br>1675 S. State Street, Suite B<br>Dover, DE 19901 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that:

1.  A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.
2.  You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.
3.  You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.  You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.
6.  If you need an interpreter, you must ask for one in writing.
7.  You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at  Santa Fe                      , New Mexico, this  02  day of       June            , 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco

By: _____

/s/ *Benjamin Allison*
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF _____ )
                            )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint and Plaintiff's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____,
(*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 9:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| SUMMONS | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | **Case No.:   D-101-CV-2017-01534**<br><br>**Assigned:   The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,<br>RAVEN TWO FEATHERS,<br>and KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND<br>DESIGN, LLC, LAUREATE EDUCATION,<br>INC., LAUREATE EDUCATION<br>INTERNATIONAL LTD., and<br>WENGEN ALBERTA, LIMITED<br>PARTNERSHIP,**<br><br>*Defendants.* | **DEFENDANT:**<br><br>LAUREATE EDUCATION<br>INTERNATIONAL LTD.<br>c/o Registered Agent:<br>Capitol Services, Inc.<br>1675 S. State Street, Suite B<br>Dover, DE 19901 |

**TO THE ABOVE NAMED DEFENDANT(S)**:  Take notice that:

1.  A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.
2.  You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.
3.   You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.  You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.
6.  If you need an interpreter, you must ask for one in writing.
7.  You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe                          , New Mexico, this 02  day of    June               , 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco
By:

/s/ *Benjamin Allison*
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*


THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF _____ )

COUNTY OF _____ )ss

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint and Plaintiff's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____,
(*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

    1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
    2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 9:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| SUMMONS | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | **Case No.:   D-101-CV-2017-01534**<br><br>**Assigned:   The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,<br>RAVEN TWO FEATHERS,<br>and KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND<br>DESIGN, LLC, LAUREATE EDUCATION,<br>INC., LAUREATE EDUCATION<br>INTERNATIONAL LTD., and<br>WENGEN ALBERTA, LIMITED<br>PARTNERSHIP,**<br><br>*Defendants.* | **DEFENDANT:**<br><br>WENGEN ALBERTA,<br>LIMITED PARTNERSHIP<br>650 South Exeter Street<br>Baltimore, MD 21202 |

**TO THE ABOVE NAMED DEFENDANT**: Take notice that:

1.  A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2.  You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3.  You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5.  You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6.  If you need an interpreter, you must ask for one in writing.
7.  You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at   Santa Fe                    , New Mexico, this 02   day of   June                , 2017.

CLERK OF DISTRICT COURT,
Stephen T. Pacheco

By:  *Victoria Marty*

/s/ Benjamin Allison
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF _____ )
                                ) ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint and Plaintiff's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant ___ _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____,
(*title of person authorized to receive service.*)   *Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/9/2017 4:16:33 PM
STEPHEN T. PACHECO
Victoria Martinez

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 8:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| SUMMONS | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | Case No.:   **D-101-CV-2017-01534**<br><br>Assigned:   **The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,**<br>**RAVEN TWO FEATHERS,**<br>**KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND**<br>**DESIGN, LLC, LAUREATE EDUCATION,**<br>**INC., LAUREATE EDUCATION**<br>**INTERNATIONAL LTD., and**<br>**WENGEN ALBERTA, LIMITED**<br>**PARTNERSHIP,**<br><br>*Defendants.* | **DEFENDANT:**<br><br>SANTA FE UNIVERSITY OF<br>ART AND DESIGN, LLC<br>c/o Registered Agent:<br>Capitol Document Services Inc.<br>55 Old Santa Fe Trail, 2nd Floor<br>Santa Fe, NM 87501 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that:

1.   A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.   You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.   You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.   If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.   You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.   If you need an interpreter, you must ask for one in writing.

7.   You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at   Santa Fe_____, New Mexico, this   02   day of   June_____, 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco

By: _____

/s/ Benjamin Allison
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF _New Mexico_ )
                              )ss
COUNTY OF _Santa Fe_ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _Santa Fe_ county on the _12_ day of _June_, _2017_, by delivering a copy of this summons, with a copy of Class Action Complaint, Jury Demand and Plaintiff Zac Franklin's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]   to the defendant _____ (_used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint_)

[ ]   to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (_used when service is by mail or commercial courier service_).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (_used when the defendant is not presently at place of abode_) and by mailing by first class mail to the defendant at _____ (_insert defendant's last known mailing address_) a copy of the summons and complaint.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (_insert defendant's business address_) and by mailing the summons and complaint by first class mail to the defendant at _____ (_insert defendant's last known mailing address_).

[X]   to _Cherie Jorgensen_, an agent authorized to receive service of process for defendant _Santa Fe University of Art & Design LLC_

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (_used when defendant is a minor or an incompetent person_).

[ ]   to _____ *(name of person),* _____,
*(title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: _____

Signature of person making service

Title *(if any)*

Subscribed and sworn to before me this _6_ day of _June_ _2017_

Judge, notary or other officer
authorized to administer oaths

OFFICIAL SEAL
Starr M. Bowers
Notary Public
State of New Mexico
My Commission Expires: _____

_____
Official title

## USE NOTE

1.   Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.   If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
7/3/2017 9:11:29 AM
STEPHEN T. PACHECO
Victoria Martinez

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 9:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| **SUMMONS** | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | Case No.:   **D-101-CV-2017-01534**<br><br>Assigned:  **The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,<br>RAVEN TWO FEATHERS<br>and KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND<br>DESIGN, LLC, LAUREATE EDUCATION,<br>INC., LAUREATE EDUCATION<br>INTERNATIONAL LTD., and<br>WENGEN ALBERTA, LIMITED<br>PARTNERSHIP,**<br><br>*Defendants.* | **EFENDANT:**<br><br>LAUREATE EDUCATION, INC.<br>c/o Registered Agent:<br>Capitol Services, Inc.<br>1675 S. State Street, Suite B<br>Dover, DE 19901 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that:

1.   A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.   You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.   You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.   If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.   You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.   If you need an interpreter, you must ask for one in writing.

7.   You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at  Santa Fe _____, New Mexico, this  02  day of  June _____, 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco

By: _Victoria Martinez_____

*/s/ Benjamin Allison*
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF _Delaware_ )

COUNTY OF _New Castle_ )ss

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _New Castle_ county on the _12_ day of _June_, _2017_, by delivering a copy of this summons, with a copy of Class Action Complaint, Jury Demand and Plaintiff Zac Franklin's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]   to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]   to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[✓]   to _Jessica Davis, Managing Agent_, an agent authorized to receive service of process for defendant _Laureate Education, Inc._.

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____.
(*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

Daniel Newcomb, Process Server
Title (*if any*)

Subscribed and sworn to before me this 14    day of June_____, 2017 .[2]

_____
Judge, notary or other officer
authorized to administer oaths
Notary Public, State of Delaware
Official title

USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
7/3/2017 9:11:29 AM
STEPHEN T. PACHECO
Victoria Martinez

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 8:37:41 AM
STEPHEN T. PACHECO
Victoria Martinez

| SUMMONS | |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF SANTA FE<br>FIRST JUDICIAL DISTRICT<br><br>**Court Address:**<br>225 Montezuma Avenue<br>Santa Fe, NM 87505<br>**Court Telephone No.:**<br>505-455-8250 | **Case No.:   D-101-CV-2017-01534**<br><br>**Assigned:   The Honorable Francis J. Mathew** |
| **ZAC FRANKLIN,**<br>**RAVEN TWO FEATHERS,**<br>**and KEVIN BRENNAN,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**SANTA FE UNIVERSITY OF ART AND**<br>**DESIGN, LLC, LAUREATE EDUCATION,**<br>**INC., LAUREATE EDUCATION**<br>**INTERNATIONAL LTD., and**<br>**WENGEN ALBERTA, LIMITED**<br>**PARTNERSHIP,**<br><br>*Defendants.* | **DEFENDANT:**<br><br>LAUREATE EDUCATION<br>INTERNATIONAL LTD.<br>c/o Registered Agent:<br>Capitol Services, Inc.<br>1675 S. State Street, Suite B<br>Dover, DE 19901 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that:

1.  A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.  You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.  You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.  If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.  You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.  If you need an interpreter, you must ask for one in writing.

7.  You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe _____, New Mexico, this 02 day of June_____, 2017.

CLERK OF DISTRICT COURT
Stephen T. Pacheco
By: _____

/s/  *Benjamin Allison*
Paul Bardacke
Benjamin Allison
Justin Miller
BARDACKE ALLISON LLP
141 E. Palace Avenue
PO Box 1808
Santa Fe, NM  87501
505-995-8000
505-672-7037 (f)
paul@bardackeallison.com
ben@bardackeallison.com
justin@bardackeallison.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
505-982-8533
505-982-6698 (f)
set@tinklernm.com

*Attorneys for Plaintiffs*


THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF <u>Delaware</u>               )
                                                )ss
COUNTY OF <u>New Castle</u>        )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in <u>New Castle</u> county on the <u>12</u> day of <u>June</u>, <u>2017</u>, by delivering a copy of this summons, with a copy of Class Action Complaint, Jury Demand and Plaintiff Zac Franklin's First Set of Interrogatories and Request for Production of Documents attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[✓]    to <u>Jessica Davis, Managing Agent</u>, an agent authorized to receive service of process for defendant <u>Laureate Education International Ltd.</u>.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____,
(*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Daniel Newcomb, Process Server
Title (*if any*)

Subscribed and sworn to before me this __14__ day of ___June___, 2017 _2

_____
Judge, notary or other officer
authorized to administer oaths

_____
Notary Public, State of Delaware
Official title

## USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]